IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| DEBORAH S. BUOL, Plaintiff, vs. ANDREW SAUL,[1] Commissioner of Social Security, Defendant. | No. 19-CV-52-LRR-KEM<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Deborah S. Buol seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Buol argues that the administrative law judge (ALJ), Janice E. Barnes-Williams, erred by finding Buol's physical impairments nonsevere and by discounting the opinion of Buol's treating psychiatrist. Buol also raises (for the first time) an Appointments Clause challenge in reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). I recommend **affirming** the ALJ's decision.

## I. BACKGROUND[2]

Over the years, Buol has worked full-time in a variety of retail positions, staying at each job for a few years. *See* AR 380, 546-47. In 2012, she completed a college program to be a medical assistant, and she began working as a certified medical assistant in July 2012. AR 138, 380, 399. She left that position at the end of February 2013 to

---

[1] Social Security Commissioner Andrew Saul is substituted for his predecessor in accordance with Federal Rule of Civil Procedure 25(d).

[2] For a more thorough overview, see the Joint Statement of Facts (Doc. 9).

work for a different doctor's office, but she lost her new job after only four weeks of employment because she could not figure out the computer system. AR 380, 517, 541, 543, 546. She did not obtain a new job for a few months—her husband underwent back surgery during that time—but after several rounds of interviews beginning in early July 2013, she began working once again as a medical assistant in September 2013, this time for a dermatologist's office. AR 140, 380, 536-37, 540. She worked full-time at the dermatologist's office for about five months, quitting near the end of February 2014 after the office switched to a paperless system that she had trouble adjusting to. AR 140, 380, 399, 530-31.

Buol applied for DI benefits on May 30, 2014, alleging disability since the end of February 2014 based on anxiety, depression, stress, gastroesophageal reflux disease (GERD), osteoarthritis, osteopenia, and fluid retention. AR 167. The Social Security Administration denied Buol's DI application on initial review in September 2014 and on reconsideration in December 2014. AR 167-192.

While her DI application was still pending initial review, in July 2014, Buol began working part-time (about twenty-five hours a week) at a Casey's gas station. AR 367, 436, 567, 612, 627. She worked there until her husband's death in December 2014. AR 141. She could have returned to work at Casey's when she was ready, but she obtained new part-time employment at a Hy-Vee drug store in February 2015. AR 149-50, 740, 743-45. Buol testified that she worked at Hy-Vee for six to nine months but quit due to anxiety about how to use the computer screens. AR 150-52. Treatment records reflect that she was still employed at Hy-Vee in September 2015 and reported the job was going "pretty well," and she did not appear to complain to providers about the job causing anxiety (I also note that she went to stay with her daughter and her family in Arizona for three months in late December 2015). AR 151-52, 737-38, 740, 1011. In December 2016, Buol began working ten-hour shifts at a daycare two to three days a week, which

2

Buol testified required minimal use of a tablet and did not cause much anxiety. AR 138, 152-53, 733-34.

Buol requested review of the denial of her DI application, and the ALJ held an administrative hearing by video on February 8, 2017, at which Buol and a vocational expert testified. AR 22, 131-32. On May 2, 2017, the ALJ issued a written decision following the familiar five-step process outlined in the regulations[3] to determine Buol was not disabled from February 28, 2014, through the date of the decision. AR 22-35. At step one, the ALJ determined that none of Buol's part-time positions constituted substantial gainful activity. At step two, the ALJ found that Buol suffered from the severe impairments of depression and anxiety, but no severe physical impairments. AR 24. The ALJ determined that despite her impairments, Buol retained the following residual functional capacity (RFC)[4]:

> [Buol] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, and repetitive tasks, which may require detailed instructions but do not involve complex tasks; occasional public interaction; and she can work around co-workers but with only occasional interaction with co-workers.

AR 29.[5] In forming her assessment, the ALJ considered an opinion from Buol's treating

---

[3] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. §§ 404.1520(a)(4), 416.920**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

[4] RFC means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 416.945(a)(1)**).

[5] "Occasionally" is a term of art meaning "occurring from very little up to one-third of" an eight-hour workday. *See, e.g.*, **Social Security Ruling 96-9P**, 61 Fed. Reg. 34478, 34480 (July 2, 1996).

3

psychiatrist, Bryan Netolicky, MD, but assigned it little weight. AR 32.

Based in part on his determination of Buol's RFC, the ALJ found that a significant number of jobs existed in the national economy that Buol could perform, including laundry worker, lamination assembler, and inspector/grader. AR 34. Thus, the ALJ found that Buol was not disabled. AR 34-35.

Buol appealed. The Appeals Council denied Buol's request for review on March 27, 2019 (AR 1-4), making the ALJ's decision the final decision of the Commissioner. *See* **20 C.F.R. § 404.981**. Buol filed a timely complaint in this court seeking judicial review of the Commissioner's decision (Doc. 1). *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 11, 13, 14), and the Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." ***Kirby***, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

Buol challenges the ALJ's failure at step two to find any of her physical impairments severe. Buol also argues that the ALJ erred in assigning little weight to the opinion of her treating psychiatrist when determining her RFC. Finally, Buol argues that the ALJ's appointment to the position violates the Appointments Clause of the United States Constitution.

4

### A. *No Severe Physical Impairments at Step Two*

Buol argues that the ALJ erred in finding she suffered no severe physical impairments. At step two, the ALJ determines whether the claimant suffers from severe physical or mental impairments. A claimant's severe impairments "must have lasted or must be expected to last for a continuous period of at least 12 months"—which is called "the duration requirement." **20 C.F.R. § 404.1509**.

> [The Social Security Administration] cannot combine two or more unrelated severe impairments to meet the 12-month duration test. If [a claimant] ha[s] a severe impairment(s) and then develop[s] another unrelated severe impairment(s) but neither one is expected to last for 12 months, [the Social Security Administration] cannot find [the claimant] disabled, even though the two impairments in combination last for 12 months.

**20 C.F.R. § 404.1523(a)**. To determine whether a claimant suffers from severe impairments, the ALJ determines whether the claimant suffers from "medically determinable physical or mental impairment[s]," which "must be established by objective medical evidence from an acceptable medical source." **20 C.F.R. § 404.1521**. The ALJ next determines whether the impairments are severe. *See id.* An impairment is severe if it "significantly limit[s a claimant's] physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." **20 C.F.R. § 404.1522**. In other words, "[i]f the impairment would have no more than a minimal effect on the claimant's ability to work, then" it is not a severe impairment. *Kirby*, 500 F.3d at 707. "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and [the Eighth Circuit] ha[s] upheld on numerous occasions the Commissioner's finding that a claimant failed to" meet her burden of establishing that her impairments are severe. *Id.* at 708.

Here, at step two, the ALJ considered "impairments of the right hip and lumbar spine, as well as autonomic nerve system disorder and fibromyalgia," but found none

5

constituted severe impairments meeting the duration requirement. AR 25. The ALJ recognized that Buol's back and right hip issues are medically determinable impairments but concluded after summarizing the treatment records that these impairments have not had "more than a minimal effect on [Buol's] ability to perform basic work activities." AR 25-26. The ALJ also considered Buol's "autonomic nervous system disorder," finding it "is controlled with medication and does not cause any limitations in [Buol's] ability to engage in basic work activity." AR 27. With regard to fibromyalgia, the ALJ noted that this diagnosis is mentioned only in the mental-health treatment records and found that the record does not establish fibromyalgia as a "medically determinable" impairment. AR 27.

Buol argues that the ALJ should have further developed the record by obtaining an opinion from a treating doctor or a consultative examiner that evaluated the effect of Buol's back and right hip pain on her functionality (Buol does not appear to challenge the ALJ's finding with respect to Buol's autonomic nervous system disorder). *See* Doc. 11 at 3-6. Buol relies on cases holding that "[RFC] is a medical question" that must be supported by "[s]ome medical evidence." **Lauer v. Apfel**, 245 F.3d 700, 704 (8th Cir. 2001); *accord* **Combs v. Berryhill**, 878 F.3d 642, 646 (8th Cir. 2017); **Casey v. Astrue**, 503 F.3d 687, 697 (8th Cir. 2007); **Hutsell v. Massanari**, 259 F.3d 707, 711 (8th Cir. 2001); **Nevland v. Apfel**, 204 F.3d 853, 858 (8th Cir. 2000). Buol cites, and I have found, no cases standing for the proposition that "some medical evidence" (and specifically, the opinion of a medical professional who examined the claimant) must support an ALJ's determination at step two that a claimant's medically determinable impairment causes no more than minimal functional limitations. *Cf.* **Ziemann v. Berryhill**, No. 4: 16 CV 1198 RWS / DDN, 2017 WL 5495795, at *6 (E.D. Mo. Oct. 23, 2017) (rejecting claimant's argument that the ALJ erred in determining at step two that his degenerative disc disease was not severe based on a lack of supporting medical opinions when the ALJ gave good reasons for discounting a treating-source opinion, and

6

Case 1:19-cv-00052-LRR-KEM   Document 16   Filed 04/20/20   Page 6 of 16

the state agency consultants found "the evidence insufficient to evaluate plaintiff's claim" and to "show a severe impairment").

The regulations provide that the Social Security Administration "may" purchase a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the Social Security Administration] to make a determination" on the claim. **20 C.F.R. § 404.1519a(b)**. Substantial evidence supports the ALJ's determination that Buol's right hip and lumbar spine impairments did not cause more than a minimal effect on her ability to work, and the ALJ was not obligated to order a consultative examination. The ALJ summarized the treatment records, which support the ALJ's determination that Buol's hip and back pain did not limit her function (AR 25-26)—Buol received conservative treatment, primarily from her primary care provider, and often went months without seeking treatment or complaining of pain. *See* AR 558-62 (July 7, 2014: Buol reported right hip pain for the past two months; hip x-ray negative for arthritis; primary care provider noted increased pain with full range of motion of the right hip, increased dosage of medication for arthritic and joint pain, and referred to physical therapy); AR 611-710 (July to September 2014: sixteen physical therapy visits for right hip pain, which Buol reported improved pain; Buol mostly rated pain two on a ten-point scale, but ranged from as low as one to as high as four, and reported that despite pain, she engaged in activities such as sweeping and mopping for seven-hours nonstop at work, getting down into low cupboards, standing and working for two days at the county fair, going ice skating, helping a friend move, shingling roof, and routinely helping unload, split, and carry firewood); AR 569, 712-13 (September 15, 2014: x-ray of lumbar spine revealed scoliosis but no fractures or osseous abnormalities); AR 586-87, 604-06 (November 11, 2014: during annual physical, Buol reported back pain with radiation to right mid-thigh; objective examination revealed intact reflexes and sensation in all extremities, straight spine, "[n]o joint effusion or deformity," normal strength, and positive straight leg tests, especially on the right; primary care provider ordered bone

7

density test, which classified Buol as osteopenic); AR 722-24 (December 5, 2014: MRI of lumbar spine showed mild degenerative changes, moderate disc bulges, and facet joint arthopathy with "moderate to moderately severe encroachment of right neural foramen"; MRI of pelvis showed mild osteoarthritis and cyst on right hip); AR 725 (December 9, 2014: note from primary care provider excusing Buol from work for the day and noting she could resume work the next day with "[n]o cooler working, can't lift over 20 [pounds], no twisting"); AR 917 (March 19, 2015: after receiving injection in right hip, Buol reported right hip "still painful and . . . bothering her quite a bit"; objective examination noted hip pain with any kind of movement; primary care provider advised her to revisit pain specialist, diagnosed with bronchitis, and excused from work until March 23); AR 915-16 (June 17, 2015: Buol reported right hip "still bothers her once in a while"; objective examination revealed tenderness and tightness of right hip; Buol declined physical therapy); AR 1060 (November 2, 2015: note from chiropractor excusing Buol from work until November 4, 2015, based on disability); AR 908-09 (November 4, 2015: primary care provider noted "no[] . . . significant back or flank pain" during appointment for urinary symptoms); AR 904-05, 1009 (December 16, 2015: primary care provider prescribed a joint medication after Buol said she used a friend's and it "made a big difference" for her joints); AR 1011-13 (April 4, 2016: Buol reported worsening hip pain, knee pain, and low back pain at annual physical shortly after return from three-month stay with daughter where Buol helped care for five to six grandchildren; objective examination of back revealed normal range of motion and no costovertebral angle tenderness); AR 1009 (May 4, 2016: primary care provider continued joint medications, even one medication that Buol reported did not help much, and noted that Buol had mild to moderate arthritis in most of her joints and had not been doing her back, knee, or hip home exercises); AR 998 (June 3, 2016: Buol reported increased right hip and back pain after going up and down more at the lower counter at work; primary care provider described hip and back pain as "new < 28 days"; objective examination showed

8

"pretty good range of motion of the right hip," negative straight leg raise test, "can heel and toe walk," and tenderness "on either side of [lumbar] spine, not directly over the vertebral processes"; and primary care provider wrote Buol a note for work to excuse her from working at the lower counter to avoid exacerbating her pain); AR 996-97 (June 10, 2016: Buol complained of right hip pain all the time that is "very, very uncomfortable"; objective examination showed "[p]ain with any internal and external rotation of the right hip," walked with "a fairly good gait," and denied any numbness or tingling in legs); AR 1034 (June 21, 2016: MRI of hip showed very little change since December 2014 MRI); AR 992-93 (November 20, 2016: primary care provider did not note complaints of back or hip pain during visit for urinary symptoms; gait and station normal on objective examination); *see also* AR 2007-2016 (chiropractor treatment notes).

The ALJ also relied on Buol's extensive activities of daily living (even during times when she reported suffering from increased pain). AR 26. In addition to the activities of daily living reflected in the physical therapy notes, the ALJ noted Buol worked part-time (twenty to thirty hours a week) at light exertional jobs and drove long distances to Arizona to visit her daughter. AR 26.

The ALJ also noted Buol did not mention physical ailments during her testimony at the hearing. AR 26. Buol's testimony about why she could not work full-time and why she quit previous jobs focused on her anxiety. *See* AR 142, 147-48, 151-54. Buol did state that exhaustion would prevent her from working more hours at the daycare, but she did not mention back or hip pain. AR 154. Buol argues that the treatment records reflect that she "often complained of fatigue issues." Doc. 11 at 4. Buol primarily relies on treatment records from 2006 to 2013, when she was able to work full-time. AR 515-17, 543, 771, 795, 845. She also points to treatment notes reflecting she complained of fatigue in November 2015 in connection with a urinary infection and in March 2015 in connection with bronchitis. AR 908, 917. These records do no support that Buol's hip

9

and back impairments made her fatigued. Substantial evidence supports the ALJ's determination that Buol's hip and back impairments were not severe.

Substantial evidence also supports the ALJ's determination that Buol failed to establish fibromyalgia as a medically determinable impairment. *See* AR 27. The ALJ noted that Dr. Netolicky, Buol's psychiatrist, noted Buol suffered from fibromyalgia in his mental RFC opinion. *See* AR 27, 1081. But a diagnosis of fibromyalgia is insufficient to establish it as a medically determinable impairment. *See* **Social Security Ruling (SSR) 12-2p**, 77 Fed. Reg. 43640, 43641 (July 25, 2012). The ALJ noted there was no evidence that Buol met the tender-point test or suffered widespread pain for more than three months. AR 27. Although the ALJ mistakenly believed that Dr. Netolicky's RFC opinion contained the only mention of fibromyalgia in the record, any error was harmless, as the treatment records Buol relies on do not contain the objective evidence of fibromyalgia necessary to establish it as a medically determinable impairment. *See* AR 783 (primary care provider noted history of fibromyalgia in April 2007 and posited that a swollen ankle could be an exacerbation of fibromyalgia); AR 789 (primary care provider noted history of fibromyalgia in January 2007); AR 795 (Buol reported in October 2006 that she developed fibromyalgia problems after an accident in May 1988). Substantial evidence supports the ALJ's determination that Buol did not suffer from fibromyalgia as a medically determinable impairment. I recommend finding that the ALJ did not err at step two by finding Buol suffered from no severe physical impairments.

### B. Weight to Treating-Source Opinion

When determining a claimant's RFC, the ALJ considers medical opinions "together with the rest of the relevant evidence." **20 C.F.R. § 404.1527(b)**. "The ALJ must give 'controlling weight' to a treating [source's] opinion if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir.

10

2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* **20 C.F.R. § 404.1527(c)(2)**. "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016). The ALJ considers the following factors to determine the weight to assign any opinion assessing a claimant's RFC:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting the current **20 C.F.R. § 404.1527(c)**).

Dr. Netolicky has been Buol's treating psychiatrist since 2007, and he generally sees her every one to three months. AR 1081. He completed a form evaluating her mental RFC in February 2017. AR 1081-86. He opined Buol suffered no limitations in the following categories:

- Understanding, remembering, and carrying out short and simple instructions;
- Making simple work-related decisions;
- Being aware of normal hazards and taking appropriate precautions;
- Adhering to basic standards of neatness and cleanliness.

AR 1083-84. Dr. Netolicky found Buol "limited but satisfactory," defined as limited "no more than 10 percent of the workday or work week," in:

- Remembering work-like procedures;
- Working in coordination with or proximity to others without being unduly distracted;
- Asking simple questions or requesting assistance;
- Interacting appropriately with the general public; and
- Maintaining socially appropriate behavior.

*Id.* He checked boxes in between "limited but satisfactory" and "seriously limited" for the categories of maintaining attention for two-hour segments, sustaining an ordinary

11

routine without special supervision, and using public transportation. *Id.* Dr. Netolicky found Buol "seriously limited" (affecting 11-20% of the workday) in:

- Performing at a consistent pace without an unreasonable number and length of rest periods;
- Accepting instructions and responding appropriately to criticism from supervisors;
- Getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and
- Traveling in unfamiliar places.

*Id.* Dr. Netolicky found Buol between "seriously limited" and "unable to meet competitive standards" in responding appropriately to changes in a routine work setting. *Id.* Finally, Dr. Netolicky found Buol unable to meet competitive standards (affecting 20-40% of the workday) in three categories:

- Completing a normal workday and work week without interruptions from psychologically based symptoms;
- Maintaining regular attendance and being punctual within customary, usually strict tolerances; and
- Dealing with normal work stress (Dr. Netolicky indicated Buol finds the following work demands stressful: speed, precision, complexity, making decisions, exercising independent judgment, working with other people, dealing with the public and supervisors, being criticized by supervisors, simply knowing work is supervised, getting to work regularly, fear of failing at work, and potentially, remaining at work for a full day).

AR 1083-85. Dr. Netolicky also indicated that Buol would miss more than four days of work a month. AR 1085.

The ALJ assigned Dr. Netolicky's opinion little weight. AR 32. The ALJ found Dr. Netolicky's opinion inconsistent with Buol's extensive activities of daily living and Buol's own reports of her limitations. *Id.* Substantial evidence supports the ALJ's determination. The ALJ noted that although Dr. Netolicky found Buol "seriously limited" in her ability to travel in unfamiliar places, Buol drove to Arizona to visit her daughter near the end of 2015, staying for three months. AR 321, 737-38, 904, 917, 1009. The ALJ generally noted Buol's activities of daily living—including the ability to work for two days at a county fair, help a friend move, go ice skating, socialize at work,

12

go to restaurants one to two nights a week, and work part-time for twenty to thirty hours a week—are inconsistent with disabling mental limitations. AR 32; *see* **Hacker v. Barnhart**, 459 F.3d 934, 937-38 (8th Cir. 2006) (holding that the ALJ may "diminish[] the weight given the treating physician['s] opinion[]" based on a finding that it is inconsistent with the claimant's activities of daily living). The ALJ also noted that Buol testified suffering very little anxiety working at the daycare (when asked if she could increase her hours to full-time, she testified she would be too drained and exhausted). AR 152-54. Although Buol told Dr. Netolicky in November 2015 when working at Casey's that a six-hour shift was about her limit, she worked at the daycare two to three days a week in ten-hour shifts. AR 733, 739; *see also* AR 627 (reported working at Casey's from 5 p.m. to midnight in July 2014). The ALJ also noted that Buol reported being able to keep on pace with her coworkers (AR 153)—which the ALJ found inconsistent with Dr. Netolicky's finding of "serious limitations" in the ability to maintain pace without an unreasonable number of rest periods. The ALJ gave good reasons supported by substantial evidence for discounting Dr. Netolicky's opinion. I recommend finding that the ALJ did not err in assigning little weight to Dr. Netolicky's RFC opinion.

### C. Appointments Clause Challenge

The Appointments Clause of the Constitution requires that principal officers be appointed by the president with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . . the Courts of Law, or . . . the Heads of Departments." **U.S. Const. art. II, § 2, cl. 2**; *see also Lucia*, 138 S. Ct. at 2051 & n.3. The Appointments Clause does not apply to "non-officer employees—part of the broad swath of 'lesser functionaries' in the Government's workforce." *Lucia*, 138 S. Ct. at 2051.

The Supreme Court held in *Lucia* that the five ALJs for the Securities and Exchange Commission (SEC) were inferior officers subject to the Appointments Clause.

13

*Id.* Buol argues that following the reasoning in *Lucia*, Social Security ALJs are inferior officers subject to the Appointments Clause, and that her case should be remanded for a new hearing before a constitutionally appointed ALJ. Buol did not raise this issue at any point during the administrative proceedings. Thus, the Commissioner argues that Buol has forfeited her Appointments Clause challenge.

Every judge in the Northern District of Iowa has addressed this issue and held that a claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration (and have declined to excuse the forfeiture). *See* ***Rollie v. Saul***, No. 18-CV-129-CJW-KEM, 2019 WL 4673220, at *10 (N.D. Iowa Sept. 25, 2019) (Williams, J.); ***Murphy v. Berryhill***, No. 18-CV-61-LRR, 2019 WL 1140235, at *17 (N.D. Iowa Mar. 12, 2019) (Roberts, J.), *report and recommendation adopted*, 2019 WL 2372896 (N.D. Iowa Apr. 10, 2019), *appeal filed*, No. 19-2202 (8th Cir. June 12, 2019); ***Stearns v. Berryhill***, No. C17-2031-LTS, 2018 WL 4380984, at *4-6 (N.D. Iowa Sep. 14, 2018) (Strand, C.J.); ***Davis v. Comm'r of Soc. Sec.***, No. 17-cv-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018) (Reade, J.), *appeal filed*, No. 18-3422 (8th Cir. Nov. 9, 2018). Indeed, although the Eighth Circuit has not yet addressed this issue (appeals are pending), almost every district court in the Eighth Circuit has ruled in the Commissioner's favor and denied Appointments Clause challenges raised for the first time on judicial review as forfeited. *See* ***Turner v. Saul***, No. 4:18-CV-607-RLW, 2019 WL 4246841, at *4 (E.D. Mo. Sept. 6, 2019); ***Cooper v. Saul***, No. 8:18-CV-409, 2019 WL 4059758, at *12 (D. Neb. Aug. 28, 2019); ***Dixon v. Berryhill***, No. 8:18CV343, 2019 WL 3253950, at *8 (D. Neb. July 19, 2019); ***Long M. v. Berryhill***, No. 18-CV-862 (ECW), 2019 WL 2163384, at *8 (D. Minn. May 17, 2019); ***Hernandez v. Berryhill***, No. 8:18CV274, 2019 WL 1207012, at *6 (D. Neb. Mar. 14, 2019); ***Kimberly B. v. Berryhill***, No. 17-CV-5211 (HB), 2019 WL 652418, at *15 (D. Minn. Feb. 15, 2019); ***Audrey M.H. v. Berryhill***, No. 17-CV-4975 (ECW), 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); ***Catherine V. v. Berryhill***, No. CV 17-3257 (DWF/LIB),

2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019*)*; *Bowman v. Berryhill*, No. 4:18-CV-157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018); *but see Wang v. Saul*, No. 18-CV-3144 (DTS), Doc. 21-1 (D. Minn. March 12, 2020).

The vast majority of district courts have held that a claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration. *See, e.g., Morrow v. Berryhill*, No. C 18-04641 WHA, 2019 WL 2009303, at *4 (N.D. Cal. May 7, 2019); *Kline v. Berryhill*, No. 3:18-CV-00180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019); *Hutchins v. Berryhill*, No. 18-10182, 2019 WL 1353955, at *3 (E.D. Mich. March 26, 2019) (rejecting report and recommendation); *Diane S.P. v. Berryhill*, No. 4:17cv143, 2019 WL 1879256, at *23 (E.D. Va. Mar. 21, 2019) (adopting report and recommendation); *Valasquez ex rel. Valasquez v. Berryhill*, No. CV 17-17740, 2018 WL 6920457, at *2-3 (E.D. La. Dec. 17, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 77248 (Jan. 2, 2019); *Flack v. Comm'r of Soc. Sec.*, No. 2:18-cv-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019). One circuit court and a few district courts, however, have found Social Security claimants do not need to raise Appointments Clause challenges to preserve the argument for judicial review or have otherwise excused the forfeiture. *See Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020); *Ready v. Berryhill*, No. CV 18-04289, 2019 WL 1934874, at *2 (E.D. Pa. Apr. 30, 2019); *Culclasure v. Comm'r of Soc. Sec. Admin.*, No. 18-1543, 2019 WL 1641192, at *12 (E.D. Penn. Apr. 16, 2019); *Bradshaw v. Berryhill*, No. 5:18-CV-00100-RN, 2019 WL 1510953, at *2-11 (E.D.N.C. Mar. 26, 2019); *Probst v. Berryhill*, No. 5:18-CV-130-JG, 2019 WL 1749135, at *8 (E.D.N.C. March 22, 2019); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 425 (M.D. Penn. 2019); *Fortin v. Comm'r of Soc. Sec.*, No. CV 18-10187, 2019 WL 421071, at *1-4 (E.D. Mich. Feb. 1, 2019), *report and recommendation rejected in relevant part*, No. 18-10187, 2019 WL 1417161 (E.D.

15

Mich. Mar. 29, 2019); ***Muhammad v. Berryhill***, No. CV 18-172, 2019 WL 2248694, at *11-12 (E.D. Pa. Nov. 2, 2018), *report and recommendation rejected*, *id.* at *3-7 (May 23, 2019).

Buol's arguments have been previously addressed (and rejected) by other courts. I adopt the reasoning of these decisions (and of the majority of courts to address the issue). I recommend finding Buol forfeited her Appointments Clause challenge by failing to raise it during the administrative proceedings.[6]

### III. CONCLUSION

I recommend that the district court **affirm** the decision of the Social Security Administration and enter judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. **Fed. R. Civ. P. 72**. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**ENTERED** this 20th day of April, 2020.

_Kelly K.E. Mahoney_
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[6] Buol requests that this case be stayed pending the Eighth Circuit decision on the Appointments Clause issue (the court heard oral argument in November 2019). As I am proceeding on a report-and-recommendation basis, I leave the decision whether to stay this case to the district court.